IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| AVA D. C.,<br><br>   Plaintiff,<br><br>vs.<br><br>MARTIN O'MALLEY,<br>Commissioner of Social Security,[1]<br><br>   Defendant. | CV 22-134-BLG-KLD<br><br>ORDER |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq.

I.     **Procedural Background**

Plaintiff protectively filed her application for disability insurance benefits on September 28, 2018, alleging disability since August 3, 2018. (Doc. 9 at 347-53). Plaintiff was last insured for disability benefits on December 31, 2019, which means she must establish disability on or before that date to qualify for disability

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the current Commissioner of Social Security, is automatically substituted as the defendant for Kilolo Kijakazi, the former Acting Commissioner of Social Security.

benefits. Plaintiff's claim was denied initially and on reconsideration, and by an ALJ after an administrative hearing. (Doc. 9 at 138, 139, 159-170).

The Appeals Council granted Plaintiff's request for review, and remanded the case to the ALJ for (1) an evaluation of medical findings regarding physical limitations in Plaintiff's hands and wrists; (2) further evaluation of state agency physician Dr. William Fernandez's opinion as to Plaintiff's physical limitations; and (3) state agency physician Dr. Robert Campion's opinion as to Plaintiff's mental limitations. (Doc. 9 at 177-78).

On October 6, 2021, the ALJ held a second administrative hearing to address the issued identified in the remand order. (Doc. 9 at 43-77). The Appeals Council denied Plaintiff's request for review of the decision on remand, thereby making the ALJ's decision dated October 15, 2021, the agency's final decision for purposes of judicial review. (Doc. 9 at 12-17, 24-36). Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

II.   **Legal Standards**

   A.   **Standard of Review**

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity, allowing for judicial review of social security benefit determinations after a final decision of the Commissioner made after a hearing. See *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside

the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible for more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

### B. Disability Determination

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) she suffers from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial

gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). See also *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. If a claimant is found to be "disabled" or "not disabled" at any step, the ALJ need not proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If so, then the claimant is not disabled within the meaning of the Social Security Act.

At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will proceed to step three.

At step three the ALJ compares the claimant's impairments to the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant's impairments

meet or equal the criteria of a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the ALJ proceeds beyond step three, he must assess the claimant's residual functional capacity. The claimant's residual functional capacity is an assessment of the work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p. The assessment of a claimant's residual functional capacity is a critical part of steps four and five of the sequential evaluation processes.

At step four, the ALJ considers whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(4)(v). The ALJ may satisfy this burden through the testimony of a vocational expert or by referring to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the ALJ meets this burden, the claimant is not disabled.

## III. Discussion

The ALJ followed the five-step sequential process in evaluating Plaintiff's claim. At step one, the ALJ found Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2019. (Doc. 9 at 26). The ALJ further found that Plaintiff had not engaged in substantial gainful activity since the August 3, 2018 alleged onset date through her date last insured. (Doc. 9 at 26). At step two, the ALJ found that Plaintiff had the following severe impairments: left shoulder arthropathy, status post arthroplasty, hypertrophic changes of the right shoulder, juvenile rheumatoid arthritis, obesity, and avascular necrosis. (Doc. 9 at 26) At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments, 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. pt. 404, subpt. P, app. 1. (Doc. 9 at 28).

The ALJ then found that Plaintiff had the residual functional capacity (RFC) to perform a range of sedentary work as follows:

> The claimant could be on her feet (walking and/or standing) for two hours in an eight-hour day and sit for six hours. The claimant could lift 10 pounds occasionally and less than 10 pounds frequently. The claimant could not climb ladders, ropes, or scaffolding, nor could the claimant crawl or kneel. The claimant could perform all remaining postural activities occasionally. Except for overhead activities, the claimant could reach with her upper extremities (bilaterally) on a frequent basis. With regard to overhead activities, the claimant could lift light weights (defined as 1 pound or less) occasionally. She could push and pull with her upper extremities and lower extremities (bilaterally) occasional. She could perform gross and fine motor

activities with her upper extremities (bilaterally) frequently, but not constantly. Finally, the claimant needed to avoid concentrated exposure to extreme cold, vibrations, and uneven or rough surfaces.

(Doc. 9 at 29). At step four, the ALJ determined that Plaintiff was unable to perform past relevant work as a bank teller and retail sales clerk. (Doc. 9 at 34). Proceeding to step five, the ALJ concluded there were other jobs existing in significant numbers in the national economy that Plaintiff could perform, including sedentary work as a telephone solicitor, callout operator, and charge account clerk. (Doc. 9 at 35).

Plaintiff argues the ALJ's decision is not supported by substantial evidence, and raises three issues on appeal. First, Plaintiff maintains the ALJ failed to consider the frequency of her medical treatment as required by Social Security Ruling (SSR) 96-8p when assessing Plaintiff's residual functional capacity. Second, Plaintiff contends the ALJ did not provide clear and convincing reasons for discounting her symptom testimony, particularly as to her need to nap, lie down, and/or recline throughout the day. Finally, Plaintiff argues that as a result of these two errors, the ALJ's RFC finding and hypothetical question to the vocational expert were incomplete.

### A. Frequency of Medical Treatment

Plaintiff argues the ALJ erred in assessing her residual functional capacity because the ALJ failed to consider and discuss the effects of her medical treatment,

7

including specifically the frequency of her medical appointments, as required by Social Security Ruling (SSR) 96-8p.

SSR 96-8p provides that a residual functional capacity "is an assessment of a claimant's ability to do sustained work-related activities in a work setting on a regular and continuing basis." SSR 96-8p,1996 WL 374184, at *1 (July 2, 1996). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p,1996 WL 374184, at *1. SSR 96-8p further directs that the residual functional capacity assessment must be based on all of the relevant evidence, including "[t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)." SSR 96-8p,1996 WL 374184, at *5 (July 2, 1996).

Here, the ALJ discussed Plaintiff's medical records at length, but did not specifically address whether the effects of her treatment, particularly the frequency of her medical appointments, could potentially interfere with her ability to work on a regular and continuing basis. Plaintiff calculates that she "saw healthcare providers two or more times per month" for seven months in 2019, and maintains the ALJ erred by failing to consider whether the frequency of her medical appointments would interfere with her ability to work on a regular and continuing basis. (Doc. 11 at 10, 11). Plaintiff argues this error was not harmless because the

vocational expert testified in response to one of the ALJ's hypotheticals that if an individual missed more than two days per month for at least six out of 12 months in a calendar year, there would not be any jobs in the national economy that such an individual could perform on a full time, consistent basis. (Doc. 10 at 71-72).

Importantly, however, Plaintiff does not cite, and the Court has not found, any medical source opinions in the record stating that Plaintiff would likely be absent from work or miss any particular number hours of work each month due to the frequency of her medical appointments. In addition, Plaintiff has presented no evidence that she would not be able to schedule her medical appointments around her work schedule, or schedule more than one appointment on the same day. S*ee Mance v. Kijakazi,* 2023 WL 5500429, at *1 (9th Cir. Aug. 25, 2023) (unpublished) (holding the ALJ did not err by not evaluating the frequency of the claimant's medical appointments because the claimant "provided no evidence that the frequency, scheduling, or duration of her medical appointments inhibited her ability to work on a regular and continuing basis," and the record did "not show, for example, that her appointments lasted entire workdays or her medical providers were concerned that she would miss work"); *Murray v. Kijakazi*, 2023 WL 3051888, at *1 (9th Cir. Apr. 24, 2023) (unpublished) (holding the ALJ incorporated all relevant functional limitations into the hypothetical question posed to the vocational expert where the claimant cited "no precedent requiring the ALJ

to calculate the frequency of her past medical appointments for various issues and then incorporate those appointments into the residual functional capacity in the form of missed work"); *Goodman v. Berryhill*, 2017 WL 4265685, at *4 (W.D. Wash. Sept. 25, 2017) (finding the claimant's "narrative citation to the frequency of his medical appointments" during the relevant period unpersuasive, as "[n]o physician opined that [the claimant] would frequently miss work due to medical appointments" and "[n]othing suggests that [the claimant] could not have scheduled his medical appointments outside of working hours"), affirmed by *Goodman v. Berryhill,* 741 Fed. Appx. (9th Cir. 2018) (unpublished).

Because Plaintiff does not cite to any evidence in the record demonstrating that the frequency, scheduling, or duration of her medical appointments would require her to miss two or more days of work every month, the ALJ did not err by not evaluating the frequency of her medical appointments.

### B.     Symptom Testimony

Plaintiff argues the ALJ failed to provide clear and convincing reasons for discounting her subjective symptom testimony, including specifically her testimony that she needed to nap and recline during the day.

The ALJ must follow a two-step process when evaluating a claimant's subjective symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has

10

presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036. If the claimant meets this initial burden, at step two the ALJ may discredit the claimant's subjective symptom testimony about the severity of her symptoms "only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036.

Here, the ALJ found Plaintiff met her initial burden because she produced evidence of medically determinable impairments that could reasonably be expected to cause her alleged symptoms. The ALJ then found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical and other evidence in the record. (Doc. 9 at 30).

Focusing on the relevant period prior to the expiration of her insured status, Plaintiff testified that she had pain, stiffness, and swelling in her hands, particularly her right hand. (Doc. 9 at 57). She described having difficulty typing, holding a pen, and writing, and stated that the clarity of her handwriting was affected. (Doc. 9 at 57-58). She estimated that she could not write or type for more than five to ten minutes without having sharp pains in her hands and wrist. (Doc. 9 at 58). Plaintiff explained that it took her a couple of weeks to complete the first set of forms required for her Social Security claim. (Doc. 9 at 58-59). Turning to her shoulder

impairments, Plaintiff testified that after her left shoulder surgery in February 2019, she started having more "serious issues than before" and her reaching and mobility did not really improve after surgery. (Doc. 9 at 60). She stated that she had more difficulty reaching with her right arm, experienced consistently sharp, dull, aching pain, and had difficult holding a steering wheel. (Doc. 9 at 60-62). Plaintiff described spending much of her time in a reclined position due to swelling in her ankles, and stated that she napped very day for two hours due to fatigue. (Doc. 9 at 63-64).

The ALJ acknowledged Plaintiff's testimony, but discredited her statements as to the severity of her symptoms and limitations for three reasons. First, the ALJ found that Plaintiff's alleged limitations were not fully supported by the objective medical evidence. (Doc. 9 at 30). For example, contrary to Plaintiff's testimony that she had more serious issues and her range of motion did not really improve after her February 2019 surgery, the ALJ cited physical examination findings from May 2019 showing that she had normal range of motion and no abnormalities in the musculoskeletal system. (Doc. 9 at 31, 729). The ALJ cited additional medical records from the period between July 2018 and July 2020 reflecting that Plaintiff had full range of motion and no synovitis in her neck, right shoulder, and bilateral elbows (Doc. 9 at 153, 887, 924, 930, 933). The ALJ reasonably found that Plaintiff's testimony as to the severity of shoulder related her symptoms and

resulting limitations was not entirely supported by the objective medical evidence. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); *Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1161(9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for the rejecting the claimant's subjective testimony.")

Second, the ALJ found Plaintiff's symptom testimony was not entirely consistent with evidence that "she found relief with treatment." (Doc. 9 at 30). Contrary to Plaintiff's hearing testimony that she did not really gain mobility or have improved reaching abilities after shoulder surgery, the ALJ cited physical therapy records showing that approximately one month after surgery Plaintiff demonstrated "much improved shoulder [range of motion] overall" and "less pain." (Doc. 9, 781). The records cited by the ALJ show that Plaintiff continued to show improved range of motion in the weeks after surgery, reported she was "much improved," was experiencing decreased pain overall, and was progressing towards her goals. (Doc. 9 at 30, 778, 780, 784, 786 ). The ALJ permissibly found that evidence showing that Plaintiff's improved with treatment undermined her symptom testimony. *See Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir.

2017) (a claimant's improvement with treatment undermines a claim of disability); *Morgan v. Comm'r of Social Sec. Admin*, 169 F.3d 595, 600 (9th Cir. 1999) (an ALJ may rely on the effectiveness of treatment when evaluating a claimant's subjective symptom testimony).

Third, the ALJ discounted Plaintiff's testimony based on inconsistencies between her allegations and her reported daily activities. (Doc. 9 at 31). In particular, the ALJ cited a December 2018 function report in which Plaintiff indicated she prepared meals, cared for her pets, and performed household chores such as occasional vacuuming, doing laundry on good days, and dusting. (Doc. 9 at 31, 396-97). The ALJ noted that Plaintiff also reported driving, using a computer, shopping, using her iPad, attending church, visiting friends, and engaging in community services. (Doc. 9 at 398-400). While these activities were fairly limited, the ALJ reasonably found they were not entirely consistent with her testimony as to the extent of her pain and limited mobility. (Doc. 9 at 31). See e.g. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (holding that an ALJ can consider a claimant's ability to perform daily activities when assessing subjective symptom testimony); *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (noting that a conflict between daily activities and medical opinion may justify discounting medical opinion)

Plaintiff contends the ALJ failed to provide any specific reasons for

discounting her testimony that she has chronic pain, stiffness, and swelling in her hands and has difficulty writing or holding a pen. (Doc. 11 at 27). But the ALJ specifically addressed this testimony, observing that "she was able to complete her written adult function report with apparent superior penmanship" and continued to engage in the daily activities listed above. (Doc. 9 at 31, 395-402). Even if this particular reasoning was not supported by substantial evidence in light of the fact that Plaintiff testified it took her several days to complete her disability paperwork, as discussed above the ALJ provided other clear and convincing reasons for discounting Plaintiff's symptom testimony. See *Joshua P. v. Kijakazi*, 2021 WL 4330858, at *3 ( D. Or. Sept. 23, 2021) ("To avoid committing harmful error, an ALJ must provide only one clear and convincing reason, supported by substantial evidence, for discounting a claimant's symptom testimony.") (citing *Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017).

    Plaintiff additionally argues the ALJ erred by not expressly addressing her testimony that she needs to take naps and lie down or recline during the day. But "an ALJ is not required to discuss every piece of evidence or explain why every subjective limitation has been rejected." *Janet E.F. v. Saul*, 2021 WL 2808699, at *2 n. 5 (C.D. Cal. July 6, 2021). Rather, the ALJ is only "required to make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony."

*Newman v. Berryhill*, 2017 WL 2937967, at *2 (W.D. Wa. July 10, 2017) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)). As addressed above, the ALJ provided clear and convincing reasons for discounting Plaintiff's symptom testimony overall. *See Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (the Ninth Circuit does not require an ALJ to "perform a line-by-line exegesis of the claimant's testimony").

Plaintiff argues the ALJ overlooked medical evidence that supports her testimony and demonstrates that she needs to take daily naps. (Doc. 11 at 26). But the records she cites refer to her own self-reported need to take frequent naps and do not include any medical findings to that effect by Plaintiff's medical providers. (Doc. 11 at 26 citing Doc. 9 at 229, 692).

The Court may not substitute its own, or the Plaintiff's, interpretation of the evidence for the ALJ's reasonable interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th. Cir. 2002). *See also Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (Even if the record is "susceptible to more than one rational interpretation," if the ALJ's decision is supported by substantial evidence it must be upheld."). Therefore, the Court concludes the ALJ provided clear and convincing reasons, supported by substantial evidence in the record, for partially discounting Plaintiff's testimony as to the extent of her symptoms and limitations.

    **C.**     **Medical Evidence**

To the extent Plaintiff generally asserts the ALJ ignored medical evidence that she claims supports a greater degree of functional loss than assessed by the ALJ in the RFC (Doc. 11 at 9), Plaintiff has not shown that the ALJ erred. While Plaintiff summarizes many of her medical records and treatment notes, she does not cite to any medical opinion evidence identifying specific functional limitations that she believes should have been included in the RFC. (Doc. 11 at 12-18).

An ALJ is not required to discuss every treatment note in the record. See *Schmitz v. Saul*, 857 Fed. Appx. 368 (9th Cir. May 21, 2021) (citing *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)). Treatment notes generally do not constitute medical opinions the ALJ must weigh. Treatment notes must include opinions regarding Plaintiff's limitations or ability to work to be considered a medical opinion. *See* 20 C.F.R. § 416.913(a)(2) and 20 C.F.R. § 4041513(a)(2) ("A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in your work-related abilities.).

Because Plaintiff does not explain the significance of any particular treatment notes or point to any specific functional limitations identified in the treatment notes that she claims the ALJ should have incorporated into the residual functional capacity, she has not shown that the ALJ erred in his evaluation of the medical evidence. The ALJ's RFC findings are supported by the opinions of state

17

agency physician Dr. William Fernandez, who identified limitations consistent with ability to perform a range of sedentary work. (Doc. 9 at 127-137). In fact, the ALJ gave the Plaintiff the benefit of the doubt and adopted more restrictive lifting restrictions than those identified by Dr. Fernandez. (Doc. 9 at 33).

### D.  Vocational Expert

Plaintiff argues the ALJ erred by failing to account for the frequency of her medical appointments, and failing to incorporate her need to lie down and nap or recline during the day, into the hypothetical question presented to the vocational expert. Hypothetical questions posted to the vocational expert must set out all the limitations and restrictions of the claimant. *Embrey v. Bowen,* 849 F.2d 418, 422 (9th Cir.1988).  "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (quoting *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982)).  If the assumptions in the hypothetical are not supported by the record, then the vocational expert's testimony that the claimant could perform other work existing in the national economy has no evidentiary value. *Embrey*, 849 F.2d at 422.

As discussed above, the Court has determined the ALJ provided sufficient reasons for discounting Plaintiff's symptom testimony and properly evaluated the medical evidence. The Court has also determined that the ALJ did not err by not

addressing the frequency of Plaintiff's medical appointments. Accordingly, the ALJ was not required to include any additional imitations in the residual functional capacity assessment, which was supported by substantial evidence. See *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (the ALJ need not include limitations not supported by substantial evidence). The ALJ permissibly found based on the vocational expert's testimony that Plaintiff was not disabled at step five of the sequential evaluation process.

## IV.   Conclusion

For the reasons discussed above, the Court concludes the ALJ's decision is based on substantial evidence and free of prejudicial legal error. Accordingly,

IT IS ORDERED that the Commissioner's decision is AFFIRMED.

DATED this 13th day of March, 2024.

_____
Kathleen L. DeSoto
United States Magistrate Judge